### The PEOPLE of the State of Colorado, Petitioner,

v.

### John B. CHAVEZ, Respondent.

### No. 92SC76.

Supreme Court of Colorado,
En Banc.

June 7, 1993.
Rehearing Denied July 6, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Paul Koehler, Asst. Atty. Gen., Crim. Enforcement Section, Denver, for petitioner.

David F. Vela, State Public Defender, Beth L. Krulewitch, Deputy State Public Defender, Denver, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

The defendant, John B. Chavez, was charged by information with attempted second degree burglary [1] and with being a habitual criminal.[2] After a trial at which he did not testify, the jury convicted Chavez of both charges. Chavez appealed the convictions, and the court of appeals reversed, holding that the trial court's advisement regarding the defendant's right to testify was insufficient to support an inference that the defendant's relinquishment of his right to testify was a valid waiver of that right. *People v. Chavez*, 832 P.2d

---

1. §§ 18–2–101; 18–4–203, 8B C.R.S. (1986 & 1992 Supp.).

2. § 16–3–101, 8A C.R.S. (1986).

1026 (Colo.App.1992). We granted certiorari and now affirm the judgment of the court of appeals.

## I.

The facts developed at trial show that Chavez was apprehended near the crime scene by one of the residents after he attempted to enter their duplex by forcing the door and was observed attempting to enter the neighboring duplex.

After the prosecution rested, the trial court advised Chavez, pursuant to *People v. Curtis*, 681 P.2d 504 (Colo.1984). The complete advisement follows:

> THE COURT: All right, we'll start over on the *Curtis* advisement, under the Constitution of the United States and the Constitution of Colorado, you have a right to testify if you want to. You also have a right not to testify. If you do testify, the district attorney will be allowed to cross-examine you and will be able to ask you about your four prior felony convictions we talked about yesterday.
>
> Do you understand all that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: A little louder.
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Have you made a decision?
>
> THE DEFENDANT: I'm not.
>
> THE COURT: You're not going to testify?
>
> THE DEFENDANT: No.[3]

The defendant did not testify, and the jury found him guilty of attempted second degree burglary and, then, after a habitual criminal phase, of being a habitual criminal. The trial court sentenced Chavez to life in prison.

**3.** There is a similar, even briefer, on-the-record advisement given by the trial court during the habitual criminal phase of the trial. It suffers from the same infirmities as the advisement above.

**4.** While it is true that the proper allocation of authority between attorney and criminal defendant is a principal value underlying our decision in *Curtis,* it is not the only important interest involved. We also stated that "The defendant's opportunity to place himself and his viewpoint before the finder of fact is necessary to legitimate the outcome of the trial. [The defendant] has the right to know, as he suffers whatever consequences there may be, that it was the claim that he put forward that was considered and rejected." *Id.* at 514.

## II.

In *People v. Curtis,* 681 P.2d 504, two questions were before the court: what are the prerequisites of an effective waiver of a criminal defendant's right to testify, and what are the duties of the trial court concerning that right. A criminal defendant has a constitutional right to testify which is based in the due process clause of the federal constitution. *Curtis,* 681 P.2d at 510. Because the right to testify is a fundamental right, a waiver of that right must be voluntary, knowing, and intentional. *Id.* at 515. In order for a defendant to make such a knowing, voluntary, and intentional decision, a defendant must be aware of the right to testify, the consequences of testifying, and the right to take the stand regardless of counsel's advice to the contrary.[4] *Id.* at 514.

To that end, we stated that a trial court must advise a criminal defendant, outside the hearing of the jury:

> that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility.

*Id.* While *Curtis* did not prescribe an exact litany for a trial court to repeat in giving an advisement to a defendant, the record must show that the defendant was properly advised and that the defendant, if he or she chooses not to testify, waived this right voluntarily, knowingly, and intelligently. *See Tyler v. People,* 847 P.2d 140 (Colo.1993).

■ Here, the trial court informed the defendant that he had the right to testify or not to testify. The trial court also told the defendant that the prosecution would be allowed to cross-examine him, and that his four prior felony convictions could be disclosed to the jury if he chose to testify. No explanation was given Chavez of the limited purpose for which such felonies could be admitted. The trial court neither informed the defendant that the decision to testify or not was a personal one, nor informed him adequately of the consequences of testifying.[5]

We find that this advisement was both defective under *Curtis* and affirmatively misleading in its content. Chavez was charged not only with the substantive crime of attempted burglary but also of being a habitual criminal. Chavez was not informed that, if he testified, his prior felony convictions could be considered only to impeach his credibility. *See* C.R.E. 608; § 13-90-101, 6A C.R.S. (1987). By its silence, the trial court left the impression that the prior convictions could be used as substantive proof for the habitual criminal phase of the trial.[6] Clearly the inference raised by the trial court's incomplete advisement is wrong. If Chavez chose to testify, he would be entitled to an instruction explaining to the jury that evidence of his prior felonies was admitted only for the limited purpose of impeaching his credibility. *Curtis*, 681 P.2d at 514. Further, the prosecution at all times had the burden to prove the defendant's prior felonies at the habitual criminal phase of the trial. Since the trial court gave the defendant no explanation of these important, but technical,

legal concepts, Chavez reasonably could have inferred that the prosecution would be relieved of its burden to prove his prior felonies if he testified and were forced to acknowledge his prior felony convictions. The inadequate advisement denied Chavez of an opportunity to make a voluntary, knowing, and intelligent waiver of his right to testify.

We reiterate that there is no prescribed litany or formula which must be followed in advising the defendant of his right to testify. However, the advisement given must include the *Curtis* elements and avoid misleading a defendant about the consequences of a decision not to testify. In this case, the trial court misinformed the defendant of the purposes for which prior felony convictions could be used if the defendant testified and the advisement cannot be upheld.

### III.

The People contend that any errors in the trial court's advisement to Chavez were harmless because he stated on the record during the habitual criminal phase of the trial, "No, I don't want to testify." As noted above, the defendant also responded "No" when he was asked by the trial court during the guilt phase, "You're not going to testify?" In addition, the People assert that the defendant must show that he was prejudiced by the defective advisement and that he would have testified if he had been advised properly. Since nothing in the record indicates that the defendant was forced to remain silent, the People conclude that the defendant's convictions should be upheld. We disagree.

---

5. We reject the People's contention that the trial court's use of the pronoun "you" adequately informed the defendant that the right to testify was his personal right. While the defendant probably understood that he personally would take the stand if he chose to testify, nothing in the trial court's remarks told him that the decision was his alone to make and that his attorney could not override his choice. Perhaps more importantly, as explained in the text, the advisement given during the guilt phase of the trial served to affirmatively mislead the defendant as to the consequences of testifying. The People

do not assert that the other missing elements of *Curtis* are to be found elsewhere in the record.

6. We also granted certiorari to consider whether our pre-*Curtis* decision in *People v. Chavez*, 621 P.2d 1362 (Colo.), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), requires any advisement in addition to the *Curtis* requirements in a case involving a defendant charged with being a habitual criminal. Because both parties conceded in oral argument that *Chavez* required no additional advisement under the facts of this case, we dismiss certiorari on this issue as improvidently granted.

■ The defendant's statement that he did not want to testify is evidence of a voluntary waiver, but it does not indicate that the waiver was knowing and intelligent. We considered a similar issue in the context of a defendant's waiver of his right to counsel in *People v. Arguello*, 772 P.2d 87 (Colo.1989). We held that the defendant's conduct effected a "voluntary" waiver when the defendant refused "without good cause to proceed with able appointed counsel." *Id.* at 94. However, we also held that "the waiver is not valid until the court ensures that the waiver is made *knowingly* and *intelligently*." *Id.* (emphasis in original). While the record contained ample evidence that the defendant voluntarily waived his right to counsel by his obstreperous conduct, his conduct could not "be considered a valid waiver of his right to counsel in the absence of proof that he was adequately informed so as to understand the consequences of his actions." *Id.* at 97.

The same analysis applies here. The defendant's statements satisfy the "voluntary" part of the waiver requirement. However, without an adequate advisement of his right to testify, the defendant's statements do not demonstrate a knowing and intelligent waiver of his right to testify. Thus, there is no valid waiver.

We also decline to adopt the People's suggestion that we require the defendant to prove that he was prejudiced by the trial court's inadequate and misleading advisement. This is clearly contrary to the *Curtis* advisement requirement, which we have repeatedly affirmed. *See, e.g., Tyler*, 847 P.2d at 142 (quoting with approval elements of *Curtis* advisement); *Roelker v. People*, 804 P.2d 1336 (Colo.1991) (same). We adhere to the *Curtis* advisement requirement.

The judgment of the court of appeals is affirmed.

VOLLACK, J., dissents, and ROVIRA, C.J., and ERICKSON, J., join in the dissent.

Justice VOLLACK dissenting:

The majority finds that the trial court inadequately advised the defendant John B. Chavez (Chavez) of his right to testify at trial pursuant to *People v. Curtis*, 681 P.2d 504 (Colo.1984). I disagree. I find that, in light of the purpose underlying *Curtis*, and of the cases construing our holding in *Curtis*, the advisement given by the trial court satisfied *Curtis*. I dissent.

## I.

We have repeatedly stated that *Curtis* "requires that the trial judge ensure the defendant's waiver of his right to testify is intelligently and competently made." *Roelker v. People*, 804 P.2d 1336, 1338 (Colo.1991); *see Tyler v. People*, 847 P.2d 140, 142 (Colo.1993); *Curtis*, 681 P.2d at 514. We have additionally stated that,

[i]n order to ensure that the right to testify is voluntarily, knowingly, and intentionally waived, *Curtis* requires that the trial judge give the defendant an "advisement" outside the presence of the jury:

"[T]hat he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he had been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility."

*Tyler*, 847 P.2d at 142 (quoting *Curtis*, 681 P.2d at 515); *see Roelker*, 804 P.2d at 1338. " '[T]he actual holding of *Curtis* limits the trial judge's responsibility to advising the defendant of his right to testify and the consequences of doing so.' " *Tyler*, 847 P.2d at 142–43 (quoting *Roelker*, 804 P.2d at 1338); *see Roelker*, 804 P.2d at 1338. "The purposes of advisement by the court on the record are to ensure that waiver of a fundamental constitutional right is intelligent and knowing, to preclude postconviction disputes between defendant and counsel over the issue, and to facilitate appellate review." *Curtis*, 681 P.2d at 515 (rely-

ing on *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)).

"*Curtis* did not decide what the minimum requirements are to establish a waiver of a defendant's right to testify in his own defense." *Roelker,* 804 P.2d at 1339; *see Tyler,* 847 P.2d at 143. Since *Curtis,* our decisions regarding advisements on the right to testify have similarly declined to mandate that a particular litany must be given to every defendant. *See Tyler,* 847 P.2d 140; *Roelker,* 804 P.2d 1336. Such a requirement would frustrate the purposes of preventing postconviction disputes and facilitating appellate review. *See Curtis,* 681 P.2d at 515. Thus, Colorado courts have found satisfactory advisements when: (1) "the record contains no explicit reference that the defendant waived his right to testify," *Tyler,* 847 P.2d at 143; (2) "[t]here is no indication that [the defendant] did not fully understand his right to testify, or that his decision not to testify was involuntary or was usurped by his lawyer," *Roelker,* 804 P.2d at 1339; and (3) "the trial court's advisement was defective because it did not warn [the defendant] of the disadvantages of testifying," *People v. Barros,* 835 P.2d 587, 590 (Colo.App.), *cert. denied* (1992); *see People v. McMullen,* 738 P.2d 23, 24 (Colo.App.1987).

## II.

The majority sets forth the advisement given by the trial judge to Chavez on August 8, 1989, during the trial for the attempted second-degree burglary charge. Maj. op. at 2–3. On August 9, 1989, during the trial on the charge of being a habitual criminal, the trial judge additionally advised Chavez:

> THE COURT: All right, Mr. Chavez, I have to give you another *Curtis* advisement. So I'll tell you again the same thing I told you yesterday. Under the Constitutions, you have the right to testify or not to testify as you choose. And if you do testify, the district attorney can cross-examine you.
>
> THE DEFENDANT: No, I don't want to testify.

> THE COURT: Okay. And you still understand what I told you yesterday?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And your decision is not to testify?
>
> THE DEFENDANT: (Nodded head.)
>
> THE COURT: Okay, sir.

Counsel for Chavez did not object to the content of the advisement when given on August 8 and 9. Chavez was convicted of attempted second-degree burglary and as a habitual criminal. Chavez appealed his convictions, contending that the failure to give an advisement in perfect compliance with *Curtis* in the context of a habitual criminal proceeding requires reversal. Chavez did not argue then, and does not presently contend, that *he did not know* that the decision not to testify was only his to make, and that *he did not know* that he could elect to testify contrary to the advice of counsel. Chavez now contends that the advisement was misleading in part because *it did not incorporate* the word "personally." Chavez also contends that the advisement was misleading because *it did not inform him* that, if he wished to testify, then his attorney could not prevent him from so doing, in spite of the fact that Chavez expressly informed the court that he did not wish to testify.

These arguments merely assert that the reversal of Chavez' criminal convictions is warranted on the ground that the trial judge failed to deliver a technically perfect advisement, and not on the ground that Chavez would have made a different decision regarding the right to testify had the advisement been more complete. If this court is of the opinion that *Curtis* advisements should be delivered without technical error, then this court should set forth a precise statement that trial judges must give. Technical arguments alone, however, presented for the first time on appeal unaccompanied by contentions that the outcome would have been different, or that the defendant did not in fact know that the decision was personal, or that the defendant's lawyer usurped his decision, should not amount to reversible error.

Based on a review of the record, I find that the advisement given in this case, where the trial judge informed Chavez on the record that he had the right to testify *as he chose*, that the district attorney would be able to cross-examine him regarding his four prior felony convictions, and where Chavez expressly stated that he understood and did not wish to testify, to be no less satisfactory than the advisements given in *Tyler, Roelker, Barros*, and *McMullen. See Roelker*, 804 P.2d at 1338 (quoting *Curtis*, 681 P.2d at 515) (" '[T]he best means of demonstrating the defendant's state of mind are his own declarations on the record.' ")  I dissent.

I am authorized to say that Chief Justice ROVIRA and Justice ERICKSON join in this dissent.